817 So.2d 891 (2002)
Robert Charles LEVERITT, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 1D98-4519.
District Court of Appeal of Florida, First District.
May 7, 2002.
Rehearing Denied June 13, 2002.
*893 William J. Sheppard and D. Gray Thomas of Sheppard, White and Thomas, P.A., Jacksonville, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, Bart Schneider and Carolyn J. Mosley, Assistant Attorneys General, Tallahassee, for Appellee/Cross-Appellant.
PER CURIAM.
Robert Charles Leveritt appeals his convictions for driving under the influence (DUI) manslaughter and vehicular homicide; and the state cross-appeals the trial court's downward departure on appellant's sentence. For the reasons that follow, we affirm all but one of the issues raised on appeal, and affirm the issue raised on cross-appeal. We also certify conflict with decisions of other districts as to one of the issues raised and certify a question of great public importance.

*894 Factual and Procedural Background

Following a day of playing golf with a friend, appellant lost control of his car on a rainy afternoon and was involved in a serious one-car accident. Appellant's passenger, his golfing friend and fellow U.S. Navy diver, was killed instantly. Appellant's blood was drawn at the hospital shortly after the accident, and an analyst for the Florida Department of Law Enforcement later tested the blood sample and found appellant's blood alcohol level to be .21. Appellant was charged with vehicular homicide and DUI manslaughter. Appellant moved to suppress results of the blood test. After an evidentiary hearing, the motion was denied.
At the ensuing trial, in addition to the blood test evidence, the prosecution adduced testimony from witnesses who saw appellant and the deceased passenger consuming Bloody Marys and beer on the day of the accident and other witnesses who smelled an odor of alcohol about the appellant's automobile after the accident. The evidence showed that there was, however, a period of several hours immediately prior to the accident during which appellant was not seen to have been drinking, and witnesses on the scene of the accident testified that they had not seen or found evidence of alcohol impairment in the accident. Without objection, the trial court instructed the jury to make certain presumptions of impairment pursuant to section 316.1934, Florida Statutes (1997), based on the blood alcohol test results, including the following:
If you find from the evidence that the defendant had a blood alcohol level of.08 percent [sic] or more, that evidence would be sufficient by itself to establish that the defendant was under the influence of alcohol to the extent that his normal faculties were impaired. However, such evidence may be contradicted or rebutted by other evidence.
The jury found appellant guilty on both counts. The trial court entered judgment adjudicating appellant guilty on both counts. This appeal ensued.

Blood Test Validity
Appellant raises several issues on appeal, most of which challenge the validity of the blood test, the central issue at trial, and the jury instruction made pursuant to section 316.1934. We find no merit to the arguments raised regarding the trial court's admission of blood samples taken from the appellant, as well as the test results based upon those samples. Further, we find no error in the trial court's decision to allow the medical examiner to testify as to the victim's blood alcohol level.
Among other things, appellant argues on appeal that he produced sufficient evidence of probable tampering with the blood samples to warrant suppression of the blood tests from trial. See, for example, Terry v. State, 668 So.2d 954, 959 n. 4 (Fla.1996). However, examining the evidence as a whole as to the drawing of appellant's blood, its storage, and its testing, we find competent, substantial evidence to support the trial court's denial of appellant's motion to suppress. See Butler v. State, 706 So.2d 100, 101 (Fla. 1st DCA 1998).
We do agree with appellant that law enforcement officials erred when they examined appellant's medical records, upon receiving them from Navy investigators, without first obtaining a subpoena pursuant to section 395.3025(4), Florida Statutes (1997). We find that this error did not preclude admission of the records at trial, however, because the state later complied with the statutory procedures. See State v. Johnson, 814 So.2d 390 (Fla.2002).

*895 Statutory Presumption of Impairment

Appellant argues that the trial court reversibly erred in instructing the jury to make the statutory presumptions of impairment, see section 316.1934, Florida Statutes (1997), because rule 11D-8.012, Florida Administrative Code, the administrative rule implementing the implied consent statutes, was declared invalid under State v. Miles, 732 So.2d 350 (Fla. 1st DCA 1999), approved in part, quashed in part, 775 So.2d 950 (Fla.2000), following the trial in the instant case. See also Mehl v. State, 632 So.2d 593, 595 (Fla.1993). As a result, contends appellant, the state may not rely on the statutory presumptions in proving the elements of DUI manslaughter. In response, the state argues that this issue is procedurally barred because the appellant failed to preserve the issue with an objection to the jury instruction. Further, on the merits, the state contends that even if rule 11D-8.012 is invalid, the blood test evidence was admissible below under the common law reliability test, citing Robertson v. State, 604 So.2d 783 (Fla. 1992), and, as a result, the statutory presumptions still apply.
We agree with appellant that, because rule 11D-8.012 is invalid under Miles, the trial court used an erroneous jury instruction regarding the statutory presumptions of impairment. See Miles, 775 So.2d at 957. Our analysis starts with State v. Bender, 382 So.2d 697 (Fla.1980). In Bender, the supreme court upheld the constitutionality of the statutory provisions which provided for the implementation of testing methods for blood or breath analysis to ensure the production of reliable, scientific evidence and to ensure the health of the person being tested. Id. at 700-01. The court explained that under the common law
scientific tests of intoxication were admissible in evidence without any statutory authority if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test.
Id. at 699. Thus, the court concluded that "the implied consent provision of chapter 322[1] and the approved testing methods and presumptions contained therein are all interrelated," id. at 699 (emphasis added), and, accordingly, that "[n]one of the statutory presumptions can apply in the absence of compliance with the administrative rules." Id. at 700.
Subsequently, in Robertson, the supreme court held that blood tests are admissible in a criminal proceeding even when the administrative rules governing the tests have not been met, so long as the three-prong common law predicate for admission of such evidence has been satisfied. The supreme court specifically advised in Robertson, however, that without complying with the administrative rules, "the state is not entitled to rely on any of the presumptions created by the implied consent law. ..." Robertson, 604 So.2d. at 791.
In Miles, this court affirmed a trial court's ruling that rule 11D 8.012 did not ensure that reliable scientific evidence would be obtained using the storage procedures outlined in the rule and that, as a result, the state was not entitled to a presumption of impairment under section 316.1934. Miles, 732 So.2d at 353; see also Mehl, 632 So.2d at 595. On the authority of Robertson, this court explained *896 in Miles that, notwithstanding the invalidity of the administrative rule, the result of an alcohol test could be admitted if the state satisfied the three-pronged common law test described in Bender for admission of scientific test results for intoxication. See Miles, 732 So.2d at 353. In Miles, we certified a question as to whether the state was entitled to use the statutory presumption of impairment when using the three-pronged common law test. Id.
On review of Miles, the supreme court held that this court did not err "in approving the finding of the trial court that rule 11D-8.012 does not comply with Bender and therefore may not give rise to the statutory presumptions associated with the implied consent law." 775 So.2d at 953-4 (emphasis added). The supreme court added that when the three-pronged common law test described in Bender is used, "the statutory presumptions would not be applicable" and "it would have been error for the trial court to have instructed the jury on any of the presumptions of the implied consent law once the State had to revert to the common law approach." Id. at 957. The supreme court concluded its decision in Miles by observing that "the common law approach (the three-prong predicate) and the presumptions are mutually exclusive to the extent that the presumptions are specifically contingent upon compliance with the mandate for quality assurance of the implied consent law." Id. (emphasis added).
It is clear from Miles (i) that rule 11D-8.012 is invalid and (ii) that the statutory presumptions of impairment cannot be used when admissibility of the blood test is based upon the common law Bender test. Below, no determination was made as to whether the three-prong common law predicate had been satisfied and the record does not reflect direct testimony as to the reliability of the blood test used, prong one of the common law predicate. Even though Miles was decided while the instant case was pending on appeal, because under Miles the state was required to establish the validity of the intoxication tests under the three-prong common law predicate, we hold that the instructions to the jury in the instant case regarding the statutory presumption of impairment are contrary to law.
Below, appellant raised no objection to the impairment instruction. If a party neither objects to nor requests other jury instructions, that party's claim of error with respect to the jury instructions is precluded from appellate review absent fundamental error. Sochor v. State, 619 So.2d 285, 290 (Fla.1993). Accordingly, whether the erroneous instruction constitutes reversible error turns on our fundamental error analysis below.

Change in Law During Pendency of Appeal
As noted, Miles was decided while the instant case was pending on appeal. As a general rule, appellate courts, in reviewing judgments on direct appeal, are required to apply the law prevailing at the time of the appellate decision. See Florida East Coast Ry. v. Rouse, 194 So.2d 260 (Fla.1966). Under Article I, sections 9 and 16 of the Florida Constitution, any decision of the Florida Supreme Court "announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation, must be given retrospective application by the courts of this state in every case pending on direct review or not yet final." Smith v. State, 598 So.2d 1063, 1066 (Fla.1992). To benefit from the change in the law, however, the defendant must have preserved the issue by objecting at trial. Id.; see also Clay v. Prudential Ins. Co. of Am., 670 So.2d 1153, 1154-55 (Fla. 4th *897 DCA 1996). If the failure to apply the changed law constitutes fundamental error, appellate review is not barred by the failure to raise the issue in the trial court. Clay, 670 So.2d at 1155.

Fundamental Error
In the instant case, a central issue is whether the giving of the presumption of impairment instruction constitutes fundamental error. "The doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." Holiday v. State, 753 So.2d 1264, 1269 (Fla.2000)(quoting Smith v. State, 521 So.2d 106, 107-08 (Fla.1988)). To constitute fundamental error, the asserted error must be "equivalent to a denial of due process." Mordenti v. State, 630 So.2d 1080, 1084 (Fla.1994)(quoting State v. Johnson, 616 So.2d 1, 3 (Fla.1993)), or "error that `reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error,'" Barnes v. State, 743 So.2d 1105, 1108 (Fla. 4th DCA 1999)(quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)). Although an erroneous instruction or failure to instruct as to an essential element of a crime may rise to the level of fundamental error, see Mercer v. State, 656 So.2d 555, 556 (Fla. 1st DCA 1995), we do not find that fundamental error occurred here.
We conclude that the instant case is controlled by Smith v. State, 521 So.2d 106 (Fla.1988). In Smith, the court held that the trial court had not committed fundamental error by giving an erroneous standard jury instruction on the insanity defense. Id. at 107. Even though the instruction had erroneously explained the law with respect to the burden of proof in cases in which the insanity defense was raised, the court concluded that, since the error had not deprived the defendant of a fair trial, fundamental error had not occurred. Id. at 108; see also Holiday v. State, 753 So.2d at 1269-70.
The instruction in the instant case neither omitted from the definition of an offense one of the essential elements, nor misdefined one of the essential elements of an offense. The challenged instruction merely advised the jury of an evidentiary presumption or permissible inference that they were free to accept or reject. See State v. Rolle, 560 So.2d 1154, 1156 (Fla. 1990); Register v. State, 582 So.2d 762, 763 (Fla. 1st DCA 1991). As in Smith, we conclude that the erroneous instruction below did not deprive appellant of a fair trial. Thus, we find no fundamental error. Smith, 521 So.2d at 108; see Cardenas v. State, 816 So.2d 724 (Fla. 1st DCA 2002); see also Dodge v. State, 805 So.2d 990 (Fla. 4th DCA 2002).
We recognize that some uncertainty exists in the case law defining the standard for determining whether fundamental error has occurred when an erroneous jury instruction is given that pertains directly to the proof of an essential element of the crime. See Reed v. State, 783 So.2d 1192, 1198 (Fla. 1st DCA 2001). As a result, we certify the following question of great public importance:
IN A DUI MANSLAUGHTER TRIAL, IS IT FUNDAMENTAL ERROR TO GIVE A JURY INSTRUCTION THAT IS ERRONEOUS BASED UPON THE PRESUMPTION OF IMPAIRMENT DECLARED INVALID UNDER MILES V. STATE[STATE V. MILES], 775 So.2d 950 (Fla.2000), WHEN THE OPINION IN MILES WAS ISSUED DURING PENDENCY OF THE APPEAL IN THE INSTANT CASE, AND WHEN MILES CHANGED THE LAW *898 APPLICABLE TO THE JURY INSTRUCTION PRESUMPTIONS OF IMPAIRMENT, AND WHEN THE ISSUE OF IMPAIRMENT WAS DISPUTED AT TRIAL AND IS AN ESSENTIAL ELEMENT OF THE CRIME.

Downward Departure
As to the issue on cross-appeal, we find no error in the trial court's decision to grant a downward departure from appellant's sentencing guidelines score on the authority of section 921.0016(4)(j), Florida Statutes (1997), which authorizes mitigation of a sentence on the ground that the "offense was committed in an unsophisticated manner and was an isolated incident for which the defendant has shown remorse." The record here contains evidentiary support for all three circumstances under subsection (j). In affirming the trial court's decision to impose a departure from the guidelines, we certify conflict with the decision of the Fourth District Court of Appeal in State v. Warner, 721 So.2d 767 (Fla. 4th DCA 1998), approved in part, 762 So.2d 507 (Fla.2000), which held that the statutory mitigating factor in section 921.0016(4)(j) did not apply to DUI cases. In our view, the authority to determine the scope of a mitigating factor under the sentencing guidelines rests with the legislature. See Borges v. State, 415 So.2d 1265 (Fla. 1982)(the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them resides wholly with the legislature). While we agree with our colleagues in the Fourth District that the State of Florida has a strong public policy against DUI, see State v. Warner, 721 So.2d at 769, we do not find any statutory basis to conclude that the legislature intended to exclude DUI cases from the operation of section 921.0016(4)(j). See State v. VanBebber, 805 So.2d 918 (Fla. 2d DCA 2001).

Vehicular Homicide Conviction
Finally, appellant argues that it was error for the trial court to enter judgment on both the DUI manslaughter count and the vehicular homicide count. The Supreme Court of Florida has held that a DUI manslaughter conviction and a vehicular homicide conviction cannot be simultaneously entered when there has been only a single death. See State v. Chapman, 625 So.2d 838 (Fla.1993). Further, here, it is not clear that the trial court intended to adjudicate appellant guilty on the vehicular homicide count. The record on appeal indicates that the trial court only intended to adjudicate appellant guilty of DUI manslaughter, and in fact, only a single sentence was imposed below.[2] The written judgment, however, reflects that appellant was adjudicated guilty as to both offenses. On appeal, the state argues that the judgment for vehicular homicide was a mere scrivener's error which should be addressed by a motion under rule 3.800(h), *899 Florida Rules of Criminal Procedure. We cannot agree. As a matter of law, the trial court erred in entering a judgment as to both convictions. See Chapman. Accordingly, the vehicular homicide conviction is VACATED.
AFFIRMED in part, REVERSED in part, and REMANDED; conflict and question certified.
BOOTH and MINER, JJ., CONCUR and VAN NORTWICK, J., CONCURS AND DISSENTS WITH WRITTEN OPINION.
VAN NORTWICK, J., concurring in part and dissenting in part.
Because the erroneous presumption of impairment instruction here involved the central disputed issue at trial and an essential element of the crime of DUI manslaughter, I conclude that the error was fundamental. Further, because Miles was decided while this case was pending on appeal, any challenge to the jury instruction at trial would have been pointless. Accordingly, I respectfully dissent from the holding of the majority as to the issue of fundamental error. I concur in all other points on appeal and in the certified question.
With respect to jury instructions, the standard for determining fundamental error has been variously described. In Stewart v. State, 420 So.2d 862, 863 (Fla. 1982), the court stated that "fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict." See also Williams v. State, 400 So.2d 542, 543 (Fla. 3d DCA 1981). In Sochor v. State, 619 So.2d 285, 290 (Fla.1993), in rejecting a defendant's argument that the trial court had committed fundamental error by failing to instruct the jury on voluntary intoxication as a defense to felony murder, the court explained that "[f]ailure to give an instruction unnecessary to prove an essential element of the crime charged is not fundamental error." Prior to Sochor, this court held that, where the instructions involve a disputed issue of fact at trial and an essential element of the crime charged, the error is fundamental and reversible even in the absence of an objection. See Steele v. State, 561 So.2d 638, 644-45 (Fla. 1st DCA 1990). Recently, in Reed v. State, 783 So.2d 1192, 1197 (Fla. 1st DCA 2001), this court described the fundamental error standard in the context of jury instructions, as follows: "[i]f the challenged instructions define either a non-existent crime or totally fail to address an element of a crime, the alleged error may be considered to be fundamental error." (Emphasis added).
In the case before us, the instructions at issue did not relate to a defense raised by the appellant, compare Sochor, 619 So.2d at 290, but set forth the standard by which the jury determined whether the state had proved that appellant was driving under the influence of alcohol, the central issue contested at trial and an essential element of DUI manslaughter, the offense charged. See § 316.193(1) and (3)(c)3, Fla. Stat. (1997). The erroneous instruction is, thus, directly "pertinent or material to what the jury must consider in order to convict." Stewart, 420 So.2d at 863. Further, because the erroneous statutory presumption instruction was the only instruction relating to the essential element of whether the appellant was "under the influence of alcoholic beverages," the instructions did not simply "totally fail to address" or erroneously define an element of the crime, see Reed, 783 So.2d at 1197, rather, the instruction amounted to an erroneous comment on the evidence required to prove that essential element, see Fenelon v. State, 594 So.2d 292, 294 (Fla.1992). The erroneous instruction, in effect, denied appellant *900 due process because it misled the jury as to the standards it must apply in assessing the evidence.[3]
In addition, because Miles was decided while this case was pending on appeal, the failure of appellant to object to the presumption instruction here should not preclude him from raising the instruction error on appeal. Objections are required to place the trial court on notice that error may have been committed to provide the court an opportunity to correct any error. See Castor v. State, 365 So.2d 701, 703 (Fla.1978); Judah v. State, 654 So.2d 994, 996 (Fla. 1st DCA 1995). In the instant case, however, because the statutory presumption was valid at the time of the trial, the presumption instruction was not then erroneous and no action of the trial court would have been appropriate.[4] Thus, any objection challenging the instruction would have been pointless.
Because the presumption of impairment instruction declared invalid in Miles involved directions to the jury on resolving disputed issues of fact that must be considered by the jury in assessing the evidence material to a central and essential element of the crime here charged, I would hold that the erroneous jury instruction constituted fundamental error which need not have been preserved by an objection. See Sochor, 619 So.2d at 290; Steele, 561 So.2d at 644-45; and Harrison v. State, 743 So.2d 178, 179 (Fla. 3d DCA 1999). Finally, because the issue of intoxication and the validity of the blood test was the central disputed issue at trial and the erroneous instruction may have contributed to the conviction, I would conclude that the error was not harmless beyond a reasonable doubt. See Goodwin v. State, 751 So.2d 537, 541 (Fla.1999).[5]
NOTES
[1] At the time Bender was decided, the implied consent law as well as the impairment presumptions, were set forth in chapter 322, Florida Statutes. They have since been moved to chapter 316.
[2] At the close of the sentencing hearing, the following colloquy occurred:

DEFENSE COUNSEL: Your Honor, what exactly was done with the vehicular homicide charge?
THE COURT: That's a good question, Mr. Stone. According to the Supreme Court it just is there.
PROSECUTOR: I mean, the State is not in a position to do anything obviously pending the appeal, so
THE COURT: If I read that case correctly it says that he can neither be sentenced nor adjudicated.
DEFENSE COUNSEL: Right. So the adjudication is just strictly to DUI manslaughter?
THE COURT: That's the only offense that I have adjudicated him guilty of.
[3] Of course, a valid presumption instruction does not impermissibly shift the burden of proof. See Register v. State, 582 So.2d 762 (Fla. 1st DCA 1991); Lamontague v. State, 728 So.2d 1181 (Fla. 5th DCA 1999).
[4] Under federal law, a failure to object does not necessarily preclude appellate review of an issue involving a change in the law during pendency of the appeal. See U.S. v. Novey, 922 F.2d 624, 629 (10th Cir.1991). As the Novey court explained:

Ordinarily, defendant's failure to object would preclude review of the issue on appeal. An exception to the rule precluding review exists where an intervening Supreme Court decision changes the law while an appeal is pending. This exception is a corollary to the principle that an appellate court should apply the law in existence at the time of appeal.
Id. (citations omitted); see also U.S. v. Washington, 12 F.3d 1128, 1139 (D.C.Cir.1994)("Under the supervening-decision doctrine, we may consider issues not raised at trial where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless.").
[5] In a harmless error analysis, "[t]he focus is on the effect of the error on the trier of fact." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). As Judge Klein explained in Mason v. State, 719 So.2d 304, 306 (Fla. 4th DCA 1998), "[i]t is important, when determining the effect of an error on the fact finder, to keep in mind that `the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged'" (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)).